UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOY C.,[1] | ) |
| | ) |
|       *Plaintiff*, | ) |
| | ) |
|       *v.* | )   No. 1:20-cv-02757-MG-JPH |
| | ) |
| KILOLO KIJAKAZI,[2] Acting Commissioner of the Social Security Administration, | ) |
| | ) |
|       *Defendant.* | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In September 2017, Plaintiff Joy C. protectively filed for supplemental security income benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of July 25, 2017. [Filing No. 13-5 at 2.] Her application was initially denied on January 16, 2018, [Filing No. 13-3 at 2-16], and upon reconsideration on July 9, 2018 [Filing No. 13-3 at 18-30]. Administrative Law Judge Crystal White Simmons (the "ALJ") conducted a hearing on October 25, 2019. [Filing No. 13-2 at 29-55.] The ALJ issued a decision on January 17, 2020, concluding that Joy C. was not entitled to receive benefits. [Filing No. 13-2 at 16-27.] The Appeals Council denied review on August 27, 2020. [Filing No. 13-2 at 2-6.] On October 26, 2020, Joy C. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Fed. R. Civ. P. 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named Acting Commissioner.

§ 405(g). [Filing No. 1.] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 16.]

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Joy C. was 34 years old on the date of her alleged onset of disability. [Filing No. 13-2 at 22.] She has a high school education and has no past relevant work experience. [Filing No. 13-2 at 22.] Joy C.'s original application alleges that she is unable to work because of liver failure and memory loss, [Filing No. 13-6 at 6], and further references that she suffers from neuropathy and is HIV positive, [Filing No. 13-6 at 8].[3]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Joy C. was not disabled. [Filing No. 13-2 at 23.] Specifically, the ALJ found as follows:

- At Step One, Joy C. had not engaged in substantial gainful activity[4] during the period at issue. [Filing No. 13-2 at 18.]

- At Step Two, Joy C. "has the following severe impairments: HIV and peripheral neuropathy." [Filing No. 13-2 at 18-20.]

- At Step Three, Joy C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 20.]

- After Step Three but before Step Four, Joy C. had the RFC "to perform light work as defined in 20 C.F.R. 416.967(b) except for no climbing ladders, ropes or

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972.

- scaffolds; occasionally climb ramps and stairs and balance, stoop, kneel, crouch and crawl; occasional exposure to pulmonary irritants; no exposure to wetness, excessive vibration; and no use of moving machinery or unprotected heights." [Filing No. 13-2 at 20.]

- At Step Four, the ALJ found that Joy C. has no past relevant work. [Filing No. 13-2 at 22.]

- At Step Five, relying on the testimony of a vocational expert ("VE") and considering Joy C.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, such as hand packager, small products assembler, and visual inspection checker. [Filing No. 13-2 at 22-23.]

### III.
### DISCUSSION

Joy C. argues that the ALJ erred: (1) by improperly discrediting her testimony about her subjective symptoms under SSR[5] 16-3p; and (2) by finding that Joy C.'s mental impairments were not severe. [*See* Filing No. 17 at 4.]

**A.    The ALJ's Analysis of Joy C.'s Subjective Symptoms**

Joy C. argues that the ALJ erred in evaluating her subjective symptoms when the ALJ found that Joy C.'s statements were inconsistent "because her treatment has been conservative and the limitations in the record do not support the severity alleged." [Filing No. 13-2 at 21.] Joy C. faults the ALJ for not "consider[ing] possible explanations for a conservative course of treatment." [Filing No. 17 at 16.]  She also says that the ALJ's decision is "devoid of the necessary and mandated level of articulation required" for the ALJ to form a logical to the conclusion that Joy C.'s subjective symptoms were inconsistent with the record. [Filing No. 17 at 16.]

---

[5] Social Security Rulings ("SSR") are interpretive rules intended to offer guidance to ALJs and are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Laurer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

The Commissioner responds that Joy C. "offer[s] no evidence showing that the ALJ erred in evaluating her symptoms," "does not cite any evidence suggesting the ALJ erred in relying on the state-agency physicians' opinions," and instead merely "cite[s] legal authority with no explanation of how that authority applies to her case." [Filing No. 18 at 5.] Indeed, the Commissioner says that Joy C.'s argument regarding the ALJ's subjective symptom evaluation is so underdeveloped in her briefing that Joy C. has waived this argument. [Filing No. 18 at 5-6.]

In reply, Joy C. disputes the Commissioner's characterization of her argument regarding subject symptom evaluation. [Filing No. 19 at 2.] She says that her argument, in part, "is that the ALJ failed to conduct necessary parts of a disability analysis," and therefore "[i]t is unclear how the [Commissioner] expects [Joy C.] to cite to the record to show that an analysis was not performed when one cannot cite to an absent argument." [Filing No. 19 at 2.]

A reviewing court will reverse an ALJ's evaluation of a claimant's subjective symptom allegations only if the evaluation is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). SSR 16-3p describes a two-step process for evaluating a claimant's own description of her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304. If there is such an impairment, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In evaluating a claimant's symptoms, an ALJ must consider objective medical evidence, the individual's own statements, and evidence from non-medical sources, considering the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type,

dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* An ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). An ALJ's "failure to adequately explain his or her credibility finding … is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

At the hearing, Joy C. testified that she has neuropathy in her feet and legs, which causes her to "have a hard time standing for very long, sitting for very long, walking very far." [Filing No. 13-2 at 37.] She testified that she could only sit for fifteen minutes until legs "start[] kind of tingling and burning." [Filing No. 13-2 at 38.] She explained that she can stand for only about fifteen minutes at a time and that she can only walk about one block. [Filing No. 13-2 at 38 ("I try to take a, a small walk every day. I can usually walk around the block.").] She also told the ALJ that she performs some daily household chores like cooking and cleaning dishes but that she sometimes needs to complete the tasks in intervals. [Filing No. 13-2 at 43-44.] Joy C. also testified that she has memory issues that prevent her from remembering appointments, dates, numbers, and other information. [*See* Filing No. 13-2 at 47-48.]

The ALJ found that while Joy C's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "statements about the intensity, persistence, and limiting effects of her symptoms … are inconsistent because her treatment has been conservative and the limitations in the record do not support the severity alleged." [Filing No. 13-2 at 21.] The

7

ALJ summarized Joy C.'s medical records, noting that after a prolonged hospitalization that began in July 2017, Joy C.'s condition improved and stabilized and reciting November 2017 medical records indicating that Joy C. "was progressing well with her strength and conditioning, and both her neuropathy and memory loss had improved," and that a physical exam showed "no extremity edema or varicosities normal respiratory and cardiovascular functioning, no musculoskeletal inflammation or ischemia, and neurologically her motor and sensation were intact with no focal deficits." [Filing No. 13-2 at 21-22.] The ALJ also noted that Joy C.'s family reported that her memory improved. [Filing No. 13-2 at 22.] The ALJ cited medical records from 2019 indicating that Joy C. "reported that she felt better, walks with her mother routinely, and her neuropathy felt as if it was resolved," [Filing No. 13-2 at 22], and a neurologist found that Joy C. "showed a normal gait, grossly intact recent and remote memory, full motor strength, and normal bulk and tone throughout." [Filing No. 13-2 at 22.]

  The ALJ is not specific about why she did not fully credit Joy C.'s testimony concerning her abilities to stand and sit or her memory issues. Instead, the ALJ relies on boilerplate language regarding the treatment and medical records not supporting the limitations described by Joy C. without explaining why the records contradict her statements regarding her pain and inability to stand or sit for more than 15-minute intervals or her claimed memory issues. *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) ("Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible.") (internal citation and quotation marks omitted). "Although an ALJ is not obligated to accept a [c]laimant's subjective statements at face value, the ALJ is required to provide a clear rationale for discrediting [c]laimant's testimony regarding her subjective symptoms." *Lashonda M. v. Saul*, 2021 WL 2659596, at *5 (S.D. Ind. June 28, 2021).

8

Without a meaningful analysis, the Court is left to guess why the ALJ found the medical record inconsistent with Joy C.'s stated symptoms. *See Frederick J. v. Saul*, 2020 WL 5769664, at *12-13 (S.D. Ind. Sept. 9, 2020), *report and recommendation adopted*, 2020 WL 5761064 (S.D. Ind. Sept. 28, 2020) (remanding where the ALJ "failed to explain any purported inconsistencies between [claimant's] subjective complaints and daily activities, and between the subjective complaints and the objective medical evidence").

Furthermore, "an ALJ cannot cite conservative care to discount a claimant's testimony without first eliciting an explanation as to why he did not pursue more aggressive care and then account for it in the decision." *Jose L. v. Saul*, 2020 WL 264521, at *5 (N.D. Ill. Jan. 17, 2020). *See also Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (holding that conservative or lack of treatment cannot support a subjective symptom finding unless the ALJ "explore[s] the claimant's explanations as to lack of medical care"). SSR 16-3p provides that while the frequency and extent of treatment sought may be a relevant consideration in evaluating subjective symptoms, the ALJ has an obligation to inquire about why the claimant's treatment has been minimal or conservative.

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p, 2017 WL 5180304, at *9. This requirement provides an additional reason why the ALJ's subjective symptom analysis was inadequate. *See Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018)

9

Because the ALJ did not adequately explain her subjective symptom assessment, substantial evidence does not support her finding and remand is warranted. *See Minnick*, 775 F.3d at 937. This does not mean that the ALJ must credit Joy C.'s subjective symptoms on remand—only that the ALJ must apply regulatory factors and discuss the rationale for finding Joy C.'s subjective statements inconsistent with specific reasons. *See Villano*, 556 F.3d at 562. Indeed, the ALJ may very well reach the same conclusion. But the ALJ's error is not harmless. *See Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) ("The only situations in which an error in … making a credibility determination can confidently be thought harmless are when a contrary determination would have to be set aside as incredible or when the trier of facts says that he would have made the same determination even if the circumstances had been different….").

The Court therefore remands this case for further consideration of Joy C.'s subjective symptoms consistent with this decision.

**B.      Joy C.'s Non-Severe Impairments**

Having found that remand is warranted based on Joy C.'s argument regarding the ALJ's subjective symptom determination discussed above, the Court declines to analyze Joy C.'s remaining argument regarding the ALJ's findings related to Joy C.'s non-severe impairments of cognitive impairment, depression, and panic disorder. Nevertheless, on remand, the ALJ should take care to fulfill his obligation to build a logical bridge from the evidence to the conclusion.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Joy C. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

Date: 11/22/2021                                          _____
                                                          Mario Garcia
                                                          United States Magistrate Judge
                                                          Southern District of Indiana


**Distribution via ECF to all counsel of record.**